UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| NORMAN S. O'NAN ) | Case No. 11-40061 |
| ) | Chapter 7 |
| Debtor ) | |
| ) | |
| BANK OF HENDERSON ) | |
| Plaintiff ) | A.P. No. 11-4019 |
| vs. ) | |
| NORMAN S. O'NAN ) | |
| Defendant ) | |
| _____ ) | |

**MEMORANDUM OPINION**

This matter came before the Court for trial on January 10, 2012. Both the Defendant, Norman S. O'Nan ("O'Nan") and the Plaintiff, Bank of Henderson (the "Bank") appeared with counsel. The parties presented testimony and exhibits for the Court to consider. The Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

**FINDINGS OF FACT**

At some point in time prior to 2008, the O'Nan purchased a business enterprise being operated at the time in Henderson, Kentucky from a Mr. Anthony Dunn. The business was known as Shelby Tire & Wheel of Henderson ("Shelby Tire & Wheel"). The purchase included various tools and equipment that were located at the premises in Henderson, Kentucky. For whatever reason, O'Nan and Mr. Dunn never memorialized the agreement. Due to eventual failure of the business, O'Nan never completed making payments to Mr. Dunn for the purchase of the property.

In March 2008, O'Nan opened an account with the Bank in the name of Shelby Tire & Wheel of Henderson, LLC. Although the business name included the term "LLC," the business entity was never incorporated either as a corporation or a limited liability company. The account

was funded with a draw on a line of credit from the Bank in the amount of $14,700.00. John Phillips, a Senior Vice President at the Bank, characterized this account as a demand note. O'Nan and the Bank renewed this debt in 2009 and 2010.

As of July 31, 2009, the business bank account had a balance of $4.04 with a debt to the Bank in the amount of $14,191.29 plus interest. The balance on the account with the Bank did not change for the remainder of 2009, with O'Nan maintaining a $4.04 balance. On February 25, 2010, after O'Nan failed to make several monthly payments, Mr. Phillips visited O'Nan and requested that O'Nan execute several loan documents, including a Promissory Note and Commercial Guaranty Agreement. (Bank's Exh. 1-4). The Promissory Note was for the sum of $11,722.01. Pursuant to the debt instruments, the Bank was given a security interest in "collateral," defined to include, but not be limited to:

> All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the

    foregoing property

(Bank's Exh. 3).  No collateral is specifically mentioned or otherwise described in the documents.  While Mr. Phillips testified that O'Nan represented to him at that time that he owned all the assets of Shelby Tire & Wheel, the Debtor disputed this testimony.  O'Nan testified that he never told Mr. Phillips he owned the property, just like he never told Mr. Owens, the Bank officer he dealt with when he opened the account in 2008, that he did not own the collateral.  O'Nan testified that he told Mr. Phillips that Mr. Dunn, the previous owner/operator of Shelby Tire & Wheel still owned the property in question.  No evidence was presented that the Bank ever inspected the property or took any other actions to verify that the O'Nan owned any of the property associated with Shelby Tire & Wheel.[1]

  The Bank did not advance any new funds upon the execution of these documents in 2010, but did agree to remove O'Nan's wife as a guarantor on the original 2008 debt.[2]  The bank statement issued on February 26, 2010 does not show a deposit to the account for any new funds and in fact reflects an account balance of the same $4.04.

  The business did not improve and O'Nan closed the business on May 10, 2010.  At that time, he simply removed himself, along with a computer, from the premises.  All the remaining equipment, tools, and inventory were left at the business premises, which O'Nan claimed was required by the terms of the Commercial Security Agreement.  (Bank's Exh. 3).  O'Nan never

---

[1] Evidence was presented that O'Nan did claim an interest in this property on his 2010 tax returns as he claimed a depreciation deduction for numerous pieces of Shelby Tire & Wheel assets. (Bank's Exh. 6).  However, nothing of this nature was presented to the Bank at the time of the loan transactions.

[2] Neither the Bank nor O'Nan introduced the 2008 loan documents reflecting the terms and conditions of the original debt.

informed the Bank he was shutting down the business. After the close of Shelby Tire & Wheel, the Bank tried to repossess the assets of the business, but was told that the property belonged to someone other than O'Nan. Even though O'Nan offered to surrender the computer, the one asset he owned outright, the Bank did not collect any funds or property through its repossession efforts.

On January 18, 2011, O'Nan filed a voluntary petition for bankruptcy relief under Chapter 7 of Title 11 of the Bankruptcy Code. On April 29, 2011, the Bank commenced this adversary proceeding against O'Nan seeking to except the loan balance from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6). The Bank contends that when O'Nan executed the documents in 2010, he pledged all the property of Shelby Tire & Wheel of Henderson, when in fact he owned none of the collateral pledged.

## **CONCLUSIONS OF LAW**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and venue is proper under 28 U.S.C. § 1409(a). The parties have submitted to the jurisdiction of this Court.

Section 523 provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
> ....
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor

4

intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. Rembert v. AT & T Universal Card Servs. (In re Rembert), 141 F.3d 277, 280–81 (6th Cir. 1998) (footnote omitted). See also In re Looney, 453 B.R. 252 (6th Cir. BAP 2011). The creditor bears the burden of proving by a preponderance of the evidence each of the above-mentioned elements in order to find a debt nondischargeable under this section. Grogan v. Garner, 498 U.S. 279, 286-87 (1991); In re Kennedy, 249 F.3d 576 (6th Cir. 2001). Furthermore, exceptions to discharge are strictly construed against creditors. Rembert at 281. In this case, the Bank failed to meet its burden of proof in several separate areas. First, the Bank failed to present evidence that O'Nan made a false statement or material misrepresentation in 2008 when he opened the account or in 2010 when he executed the commercial loan documents. While Mr. Phillips testified that in 2010, O'Nan told him he owned all of Shelby Tire & Wheel's assets, the Court does not find this testimony credible. Instead, the Court believes that O'Nan told Mr. Phillips the same thing he told Mr. Owens in 2008 that he did not own the assets of Shelby Tire & Wheel and that Mr. Dunn still owned the assets of the business. The Court cannot find from the evidence presented that O'Nan ever falsely represented to the Bank that he owned the assets of Shelby Tire & Wheel.

The Bank also failed to present evidence that it justifiably relied on any representation made by O'Nan. The Bank and O'Nan entered into their original transaction in 2008. It is at this time that the Bank advanced the funds to the Defendant. Not only did the Bank offer no evidence that O'Nan made a material misrepresentation at that time, it also offered absolutely no evidence that, *at that time*, it justifiably relied upon any allegedly false representations. Even assuming *arguendo* that O'Nan made a false statement in 2010, which the Court does not believe, subsequent

misrepresentations have no effect on dischargeability. The law is clear on this point. "[I]f the property was obtained prior to the making of any false representation, subsequent misrepresentation will have no effect upon the discharge of the debt ... The plaintiff must prove that the claimed fraud existed at the inception of the debt and that [he] relied upon it." In re Gennaro, 12 B.R. 4 (Bankr. W.D. Pa. 1981). See also In re Vissers, 21 B.R. 638, 640 (Bankr. E.D. Wis. 1982) ("[t]he fraud necessary to make a debt nondischargeable must exist at the inception of the debt"); In re DeRosa, 20 B.R. 307, 312 (Bankr. S.D.N.Y. 1982) ("the requisite fraudulent intent must be shown to have existed at the time the debtor obtained the money, property, services or extension, renewal or refinance of credit"); and In re Shepherd, 13 B.R. 367, 372 (Bankr. S.D. Ohio 1981) ("§ 523(a)(2)(A) requires that the false representation be the reason for the creditor's extension of credit").

The Bank, as an experienced lending institution, certainly had the knowledge and ability to secure protection for itself at the time the loan was made. It is not often that a bank would lend $14,700.00 to a person without receiving any type of security in return for the loan. However, it is not for the Court to intervene on behalf of the Bank and now offer it an escape from its own mistake. "[A p]laintiff cannot conduct business without due care and then maintain that as a result of deception it extended credit". Shepherd, supra, at 372. The discharge provided by 11 U.S.C. § 727 is to be granted to an honest debtor filing for protection under Chapter 7 unless the debtor is guilty of the conduct set forth in the § 523 exceptions. Here, the Bank has failed to meet its burden of showing O'Nan guilty of the conduct set forth in 11 U.S.C. § 523.

Turning to the 11 U.S.C. § 523(a)(6) count, for the discharge exception under § 523(a)(6) to apply, a debtor must: (1) "will or desire harm[;]" or (2) "believe injury is substantially certain to

6

occur as a result of his behavior." Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 465 n. 10 (6th Cir.1999). See also In re Musilli, 379 Fed. Appx. 494 (6th Cir. 2010). Nondischargeability "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

The Court is not exactly sure how the Bank is arguing that the debt should be excepted from discharge under this subsection of 11 U.S.C. § 523(a). From the Bank's trial brief, it appears the Bank is arguing that O'Nan was obligated to notify the Bank before closing the business and obligated to inform the Bank of the location of the collateral. The Bank alleges O'Nan intentionally failed to make these notifications in order to keep the Bank from recovering the collateral.

The Court disagrees. While evidence was presented that O'Nan failed to notify the Bank of the business's closing, no evidence was presented that this was done to intentionally harm the Bank. Indeed, considering the ownership status of the business's assets, it would not seem to have mattered if O'Nan informed the Bank of the closing of the business. Furthermore, with respect to the location of the collateral, O'Nan did inform the Bank of the location for the only piece of collateral that he did own, the computer. In any event, the Court finds that the Bank failed to present sufficient evidence showing a "deliberate or intentional injury." A judgment accompanying this Memorandum will be entered this same date.

*Alan C. Stout*
Alan C. Stout
United States Bankruptcy Judge
Dated: January 24, 2012

7

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| IN RE: | ) | |
| NORMAN S. O'NAN | ) | Case No.  11-40061 |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| BANK OF HENDERSON | ) | |
| Plaintiff | ) | A.P. No.  11-4019 |
| vs. | ) | |
| NORMAN S. O'NAN | ) | |
| Defendant | ) | |
| _____ | ) | |

**JUDGMENT**

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that judgment be entered in favor of the Defendant and against the Plaintiff and the complaint filed by the Plaintiff is **DISMISSED**.

This is a final and appealable order and there is no just reason for delay.

*/s/ Alan C. Stout*

Alan C. Stout
United States Bankruptcy Judge

Dated: January 24, 2012